After reading the briefs in this case, I have to tell you my reaction was, nice try. You're telling us that what the client did here didn't involve alteration or obliteration of the serial number, even though he removed parts of the weapon and scraped the serial numbers off another part of the weapon? Well, we certainly don't know from the record that the defendant did that or when, how, or where. The weapon that he was found with had this happen to it. Yes. I think that the argument turns on a slightly different point. Okay. And that is — Let's hear it. 2K1 — 2K2.1b4 imposes an enhancement for an altered or obliterated serial number. None of the identifying marks on the gun possessed by Mr. Romero-Martinez were, in fact, a serial number. And an enhancement may not be imposed for the alteration or obliteration of something which does not constitute a serial number. How do you deal with the Carter case, which says, for the purpose of enhancement, any material change that makes identification information less accessible constitutes alteration or obliteration? How do you deal with that? There are two reasons that Carter does not control this case. The first is the Court would have to dispense with the appellant's arguments regarding the fact that none of the identifying marks are, in fact, serial numbers before ever arriving at Carter. There was no dispute in Carter that there was a properly placed serial number on that firearm. Second — Where was it? Where in Carter? No. On the firearm. Where was it? The firearm in question in this case. Yes. There were three identifying marks — one on the slide, one on the barrel, and the third on an attached plate, which had been attached to the underside of the frame. None of those constitute a serial number within the meaning of the guideline. The slide and barrel do not, because there is no requirement that any serial number be placed on a slide or barrel. They are gratuitous manufacturer's marks. No enhancement may be imposed for the alteration or obliteration of a mark which is not made pursuant to some regulation. What was the difference between what was — what kind of weapon was this, a Glock? A Glock, yes. Glock 40? 9-millimeter, I believe. Okay. What was the difference between the firearm in question and a — and an identical but brand-new Glock 9-millimeter right out of the box? The expert's testimony in this case was that, based on his review of a number of Glock weapons, the difference was that there were numbers which were placed on the slide or barrel which had been ground off. Additionally — I mean, if we could go to the manufacturer and say, give me an example of an — as close as possible, an identical firearm to this one we have here in this plastic bag, and we had one manufactured at the same time from the same manufacturer, put into the same stream of commerce, et cetera, what would be the difference between the hypothetical weapon I'm describing and the weapon in question here? The — the fact that there were two numbers, one on the slide, one on the barrel, which had been ground away, and the existence of an attached plate to the underside of the frame. A new Glock of the same manufacturer would have numbers on the slide and barrel and a plate attached under the frame. The Court has, I think, available in the excerpts of record sample — exhibits from the government which were ATF samples to compare the firearm in this case with, as the Court indicated, a new — a new Glock. Do I take it from your answer that the difference between the hypothetical Glock 9-millimeter I described and the one in this case is the one in this case had some identification marks ground off? And a plate removed. Okay. However, my argument is that Glock did not comply with Federal regulations in placing those numbers, and that the enhancement, the guideline that — that when the Sentencing Commission drafted the enhancement and used the phrase serial number, they had a specific meaning in mind. That specific meaning is found in 18 U.S.C. 923I, which describes the appropriate placement of serial numbers. It requires that a serial number be engraved or cast into the frame of the firearm. Our argument turns, in large part, on what happens when a manufacturer produces a noncompliant weapon which does not contain a valid serial number. So your argument is, if they had complied, we would have obliterated it, and then the enhancement applies. But because the manufacturer didn't comply with the regulation, we get off on this one. Is that kind of where we are? Well, then no person should be subject to an enhancement for any action taken towards a firearm which does not bear a serial number within the meaning of Federal law. If I may pose a hypothetical, if Glock decided to attach a serial number on a piece of paper with a piece of tape, and somewhere in the stream of commerce someone removed it, and my client ultimately possessed it, the logical extension of the government's argument, and I take the Court's questions, would be that that person would be subject to an enhancement simply because they possessed something, even though the manufacturer had failed to appropriately place a serial number on that weapon. I'm not sure that's a logical extension, though. Go ahead. My understanding is that with respect to automobiles, Federal law requires that the vehicle identification number be displayed now on newer models on the window, on the windshield, and in one or two other places. But as a means of theft deterrent, many manufacturers will randomly put the serial number in another place on the automobile. Would the obliteration of that randomly placed additional identification, how does that play into what we're talking about here? Well, I mean, if Glock put additional or differently placed identification information on a firearm, how does that obliteration not fall within this enhancement? There are different answers depending on whether they are non-compliant or non-required. On the slide or barrel, they're simply not required, and it's of particular significance because even if there is a number on a slide or barrel, it is perfectly legally permissible for an ex-felon to possess a slide or barrel, or to possess a slide or barrel with a defaced or ground-off serial number. A slide or barrel, as the government's expert testified in this case, is not a firearm. It is a removable component piece of a firearm. And the fact that a manufacturer has decided to add a gratuitous marking to that removable part does not render it a legal serial number, the obliteration of which is then punishable. I think we understand your argument. You have a little bit of time. Why don't you save it for rebuttal where he'll from the government at this time. Thank you. Thank you. Good morning, Your Honors. May it please the Court, my name is Mary Jean Chan, and I represent the United States in this appeal. This Court should not disturb the sentencing jury's finding that beyond a reasonable doubt, Mr. Romero-Martinez possessed a firearm with an altered or obliterated serial number. This Court should affirm the district court's application of the 2K2.1B4 enhancement. The Glock firearm at issue originally had three serial numbers stamped on it. When the firearm was found in Mr. Martinez's, Romero-Martinez's possession, however, no serial numbers were visible. What were visible were markings showing that they had been removed. One serial number had been forcibly removed using metal cutting tools, and two of them had been ground off. You've heard the argument from the Defendant's Counsel that Glock put this serial number in a noncompliant position. Do you agree with that as a starter? As a starting point, the United States does not agree that it was noncompliant. With respect to the metal plate that was attached to the frame of the firearm, it complies with 923i and also Regulation 27 CFR 478.92a1i, which says that the serial number has to be affixed in a way that is not easily removable and that's conspicuous. In this case, the metal plate, and this was testified at the sentencing hearing or the sentencing trial, actually, by ATF Agent Kong. The plate is actually stamped into the frame through the manufacturing process of the frame. It's not affixed later on. It's actually part of the frame. It just happens to be a different and more durable material. The Glock itself is made of polymer, so the frame is actually plastic, whereas the frame is metal. So it's clear. The number will stand out more clearly, and it's also more permanent. It's harder to erase or rub off. That complies with 923i. It also complies with the regulations, and the regulation is consistent with the statute. The defense or the appellant has insisted on reading in basically the word directly into 923i, stating basically that not only do the serial numbers have to be on the frame or receiver, but they have to be directly on it, that there can be no material or of difference material between the frame and the actual thing that the serial number is sitting on. And that's not in the language of the statute. So there's no conflict between the regulation or the statute, and the Glock manufacturers comply with it in this case. Were any of the identification marks on the weapon unaltered? No. No, Your Honor. None of them were. There were three. One was on the barrel. One was on the slide. And if you look at the exhibits that are attached in the excerpts of record, you can see that there's sort of a shiny metal place where they've been ground off, and that's what Agent Kong testified to, that that was the evidence that they had been obliterated in that way. And, by the way, Agent Kong's testimony actually used all three words, altered, removed, and obliterated interchangeably to describe it. And one of the problems with the strict limitation or the narrow definition that the appellant tries to place on the term obliterated is that it's completely inconsistent with the plain language of the word obliterate. There's no restriction on it. There's not a technical term of art, and there's no such restriction on it in the guidelines. The plain language as it's used in the dictionaries is to do away with completely. That's what obliterated is defined as. Removed is to do away with. So in a way, obliteration is the subset of removal, and the two really have overlapping definitions. In this case, the serial numbers fall within the overlap of the definitions. So they were both obliterated and removed. And the ---- And would you agree with defense counsel that we should construe the guideline in conjunction with the regulations pertaining to serial numbers? No, Your Honor. The government's position is that the definition of serial number also is not a term of art, and there's nothing in the guidelines that refers to 923i or the requirements that are imposed upon manufacturers, which are just minimal requirements. Wouldn't that be the most logical construction, using our usual modes of statutory and regulatory interpretation? Your Honor, actually, 923i, which talks about serial numbers, doesn't define the serial numbers. It simply says that manufacturers have to put a single serial number on the firearm. So it doesn't define serial number. It simply refers to manufacturers in respect or with respect to serial numbers. So there's another problem with interpreting that with respect to the guidelines or 2K2.1b4, because the guideline specifically refers to 921.3, which is the definition of firearm, to explain what it is. The wording of the enhancement says that the enhancement applies when the firearm that was possessed had an altered or obliterated serial number. It then references to Application Note 1, which says if you want to know what firearm means, go look at 18 U.S.C. 921.3. Then when you look at that definition, it doesn't simply say it's the frame or receiver of a firearm. The first definition, it has four definitions. Part A says any weapon that can be easily or readily changed into something that can be a projectile or an explosive device. And then secondly, secondarily to that, it says frame or receiver of such a weapon. And then it also goes on to say that a silencer or a muffler also counts as a firearm by itself as well as a destructive device, but it excludes antique firearms. That definition would be superfluous and really sort of a waste if the Sentencing Commission really intended the only serial numbers to be considered to be the serial number that's on the frame or receiver. The Sentencing Commission could have done this very clearly or indicated this by either referencing 923i, or it could have simply changed the language to say that the enhancement only applies when the serial number on the frame or receiver of a firearm or weapon has been eliminated. And that's not what the guidance says. If we accept your broad interpretation, what's wrong with defense counsel's hypothetical that there could be some other document that the serial number would be attached to and that would trigger the enhancement? I'm sorry? Well, his hypothetical was you could have a piece of paper attached that was supposed to be go with the gun. Or a barcode with adhesive and somebody just takes it off. Well, first of all, that is not the case at hand. That's why it's called hypothetical. I understand that, Your Honor. But you want to you were taking a very broad view of the word serial number and a very broad view of the guidelines. So my question is let's why don't you answer his hypothetical that if you took a piece of tape and put on a barcode or a serial code at the bottom, if you took off the tape, would that trigger the enhancement? I think it possibly could. The United States position is that without a fully-fledged set of facts, it's hard to say one way or the other. But I think the argument could be made that that would count, specifically because it is a serial number that would be make it easier for law enforcement to track the firearm in question. And also because it only applies to So citizens know how they should behave out there. If they buy a Glock and it has a price tag affixed with a piece of string to the trigger guard and on that price tag is the serial number, to fully comply with the law and avoid this sentencing enhancement, they must leave the price tag on the weapon. I don't think this enhancement would apply to an innocent person. This enhancement assume a felon. Yes. Fully ready for admission into 924C status? Yes. Okay. And, you know, they know they're going to violate the law by simply having this firearm, but they want to avoid a sentencing enhancement. They're ready to do the time for having the firearm, but they want to avoid the sentencing enhancement. They have to leave the price tag on? Sure. They assume the risk. They are felons under Goodell's, under the Court's decision in Goodell. Do you really think the enhancement goes that far? That's not a common sense argument, that this is intended to apply to materials that were not part of the weapon. I completely agree. I mean, is this the mattress argument, those things at the bottom of mattresses that say do not remove this label or it's a crime, and it's directed at the, you know, I mean, that's. No, I agree. It's not a, it doesn't seem like a commonsensical argument, and it is a theoretical argument, and part of the reason it's, my answer is that we could theoretically say that it applies, but I don't think it would ever come into effect, partly because I think you have real issues of proof. The government has. Right, but we're talking about what this means. I mean, that's what this is all about, and your expansive definition doesn't make much sense to me. I mean, I can understand. I mean, I'm just reacting. I don't, I haven't decided one way or another. But it makes more sense to say, rather than adopt that, if we're confronted with saying let's look at the statute and regulations and what serial numbers mean, it would make more sense to me to look at that. I think that there's a difference between the 922K statute, for example, which applies to the general population, and the sentencing enhancement. And I think the sentencing enhancement is intended to be broad, partly because, you know, the Court's, Judge Hawkins' case in Seesing and also the Court's case in Carter, there's a very pretty broad mission or broad rationale to the sentencing enhancement, which is to prevent or to penalize anybody who has a criminal history. And mind you, the enhancement really only applies to people who have prior felony histories, that they are penalized very broadly whenever they're involved with firearms, with serial numbers, that have manipulated in a way that makes it hard to trace both the lineage of it and also the forensic value in terms of tracing. There are two types of tracing. Roberts. I think we understand your argument. Do you have any other questions, Judge? I have. Yes. Does the same enhancement apply whether there's one serial number obliterated or three or five or ten? Is it one per weapon, the enhancement? It says any firearm that has an enhancement, that has N. So it's in the singular. It's a single one will trigger it. It doesn't matter how many serial numbers. If the weapon has had one obliterated, then the enhancement applies. That's correct, Your Honor. Okay. Thank you for your argument. Rebuttal, counsel? Thank you. Thank you. I think the Court's questions and the government's answers do expose the flaws in the government's argument. Your hypothetical turned out to be a good one. Either serial number means a very broad category of things, which is up to the individual manufacturer to determine, and whatever they do will be punished if removed. Or it has a precise meaning, and the available precise meaning is as found in Section 923i, which states that a serial number must be engraved or cast on the frame or receiver. I want to address counsel's reference to 27 CFR 47892, because it is important. That regulation, 923i says engraved or cast on the frame or receiver, or in accordance with regulations promulgated by the Attorney General. 27 CFR 478 was promulgated and said that the serial number may otherwise be otherwise conspicuously placed on the firearm. Now we have to look at the fact that we have a regulation which is inconsistent with its enabling statute. What 923i said is the Attorney General can pass regulations telling manufacturers how to engrave or cast a serial number on the frame or receiver, and the Attorney General exceeded that authority in allowing the otherwise conspicuously placed language. So I think the Court's questions are very well taken, because if the Court construes the enhancement to say that serial number means what it says, a serial number as described by Federal law, Mr. Romero-Martinez may not have this enhancement applied to him, even though this manufacturer got, shall we say, 90 percent of the way towards compliance. There is no difference between the 2 percent compliance of the paper tag or price tag and the 90 percent compliance of an affixed metal plate. I want to address counsel's reference to the record and Mr. Kong's testimony, because I disagree with the characterization by the government of Mr. Kong's testimony. He testified that, in his expert opinion, no number had ever been engraved, cast, or impressed into the frame or receiver of the weapon. That means this is a noncompliant identifying mark, therefore not a serial number, and therefore not enhanceable under the sentencing guidelines. Okay. Thank you for your argument. Thank both sides for their argument. The case just argued will be submitted for decision, and we'll proceed to the last case on the calendar for this morning, which is Kern County Farm Bureau v. Allen. Counsel will come forward.
judges: Wallace, Hawkins, Thomas